May it please the Court, Counsel Bruce Campbell representing the appellant, Pacific Seafood. With the Court's permission, I'd like to ask for three minutes for rebuttal. Certainly. Thank you. This case presents the question whether Pacific Seafood is entitled to relief when its former employee, Michael Colston, violated a one-year non-compete agreement. Although Mr. Colston has, without question, failed to abide by his non-compete agreement by working for Ocean Beauty for the last ten months, Ocean Beauty and Mr. Colston argue that Pacific Seafood should essentially be left without a remedy. In their supplemental brief, they ask that the Court, if the Court reverses, that it remand the matter to the District Court for further proceedings before that Court. But then later on in the brief, they also state that the case will be moot before that can happen, which would deprive Pacific Seafood of a remedy. Okay. Well, it's not necessarily moot because there is always the possibility of an equitable extension of an injunction, which maybe Oregon hasn't ruled on yet, but some courts have. Our panel has addressed the mootness issue, and so we don't waste your time or counsel's on that for appellee. We don't think the issue is moot. So I think the issue for us is should the decision denying preliminary injunction be reversed? Thank you, Your Honor. I'll address that issue right now. The District Court abused its discretion in denying Pacific Seafood's motion for a preliminary injunction in several respects. As shown by the briefing on appeal and the record below, the Pacific Seafood established all four elements for a preliminary injunction on its claim for breach of contract, specifically breach of the non-compete agreement. First, Pacific Seafood showed a likelihood of success on the merits. There's no question here that Mr. Colston broke his promise not to compete against Pacific Seafood within one year after leaving the company. He started competing with one of Pacific Seafood's prime competitors, Ocean Beauty, one week after he left the employ of Pacific Seafood. So really the only question there is whether the non-compete is enforceable under Oregon law. And in that regard, the District Court made several errors in concluding that the agreement was not enforceable. First of all, the agreement is reasonable in terms of time and geography. It's a one-year non-compete agreement, which is well within the two-year period. Let me interrupt from Brooklyn, if I may. I'm just trying to get a realistic sense of this. Let's assume we agree with you and we decide that the preliminary injunction should have been issued. You have two months left to go on the one-year duration. What is it that you're looking for in the real world as a realistic matter here? You want this person to stop working for two months? It seems to me that there's a reality aspect here that you folks are really sort of I got each other's throats a little bit, but in the real world, what is it that you're looking for here? Your Honor, as Judge Gould suggested, we would ask that the court apply the equitable extension of the non-compete agreement. You do it now because we raised the issue. You were not asking for that initially. Initially, you were happy just to get a reversal and to do what? To have him stop working for two months? I just want to get a sense of what you think is what your client really wants to accomplish. Your Honor, I think we originally hoped that things would move along more quickly than they did. That's not always the way things work out. Here now, today, we would ask that the court reverse the order of the district court denying injunctive relief, that the court immediately enter an injunction on appeal because this record is appropriate for that, and that the one-year non-compete would run from the period in which the court enters the injunction. Well, you have a lot of theory. Would we do that? Under the equitable extension, as the court requested the parties to address in their supplemental briefs, cases from all over the country, really the weight of authority when courts have confronted this very issue. You haven't had one that said one year from the date of the court's decision, have you? We have, Your Honor. In fact, there have been a number of courts that have said from the date that the court issues the injunction, that's when they will deem the non-compete to run from that date in order to give the parties the benefit of their bargain and to prevent the courts from being unable to award effective relief because realistically, when you're dealing with a non-compete agreement, getting injunctive relief is the only way to effectively enforce that. So he's supposed to stop working now? He's working now, and he's supposed to stop working then for a year? Is that what you're asking for? We're asking that he stop competing in the territories in which he agreed not to compete. So that doesn't prevent him from working. Ocean Beauty has operations elsewhere. He can work in other territories, but he cannot work. We ask that he should not be able to work in that territory. Let me ask you a question or two on that because I'm not current on the West Coast seafood industry. But where does Ocean Beauty have its operations now? Ocean Beauty, I believe, is headquartered in the Seattle area, but they have very large-scale operations in Alaska. I believe they also have operations in Texas and along the Gulf Coast. I was familiar with their work in Alaska with the Bristol Bay Salmon Run and in some other West Coast areas. I didn't know they have operations in the Gulf. I'm saying that, I guess, on information and belief. My opposing counsel, I'm sure, can speak to that more directly. Let me ask you a different question. Of course, any non-compete has to be reasonable in scope and duration. I suppose the trade secret element here that was initially of concern to your client is knowledge of customers and marketing plans and things like that, all of which change rapidly in most industries. At this point, what does Mr. Colston know about Ocean Beauty's customer base or plans that would have impact on you if he continues to compete on the West Coast? One example, Your Honor, would be the rollout of the premium product branding initiative. That's just beginning now. That's something that in Mr. Colston's resume, which is before the court, was excluded by the trial court, but we've asked that the court reverse that aspect of the district court's decision. Mr. Colston stated that he played a key role in the go-to-market plan for the premium line of products. That is just in its infancy now and is just starting to be unrolled. Prohibiting Mr. Colston from engaging and competing against Pacific Seafood is critical for Pacific Seafood in that regard. There's also right at the beginning now of the salmon and shrimp season, and that's another important aspect of the year, too. It just seems to me that you're talking about a short duration here. Either it's going to be two months or if equitable tolling were to apply, and that's not, in my opinion, an open and shut issue by any means, and whether or not it's for our court or the district court and remand to consider that, I think this is a little bit, you know, not really that clear to me. But in any event, you're talking about either two months or another year. In the real world, haven't you folks thought about burying the hatchet and trying to resolve this matter? Have you discussed settlement? Would you be amenable to mediation? It just seems this cries out for some resolution short of going through all of these legal steps. I will say, Your Honor, we have discussed settlement, and there's been no ability to reach a resolution. Will you be amenable to mediation? We have a wonderful mediation service. We have worked through the Ninth Circuit mediator with no success. You have? We have. Where does Pacific Seafoods have its primary operations now? Its primary operation is in Clackamas County, Oregon. That's where it's headquartered, but it has operations up and down the West Coast. It's mainly Oregon, Washington, and Northern California. So the marketing in the West Coast is of major impact to it? That's correct, Your Honor, especially western Washington and Oregon. So Pacific Seafoods is headquartered in the state of Oregon. When you say the shrimp season is about to start, where do they get shrimps on the West Coast? I'm sorry, Your Honor, I don't have an answer for that question. You probably shouldn't have asked it then. It's a fair question. I'll try to figure that out. It suggests that we have the power to grant the preliminary injunction should we agree with your thesis that it was improperly denied. I'm not so clear about that. It seems to me that if there are factual matters that have to be weighed, that that would be the function of the district court and not the circuit court, and that the only time that the circuit court can do this is if there are just pure issues of law that were not properly resolved. I'm a little curious about how you see that. Your Honor, in a number of cases, the Ninth Circuit has, in fact, issued injunctive relief on appeal, and there really seems to be two circumstances when that's present. One is when in order to avoid mootness or to avoid further irreparable harm, but second is when the record is sufficiently clear, and I think it's the unusual case where you'd have no factual disputes. As I was preparing, I was looking at one of the cases we cited in our original brief. It's called Arc of California, and it states the issue flipped around, and it says when the propriety of the injunction turns on intensely factual issues, the matter should be decided in the first instance by the district court. Here I submit there are not intensely factual issues for this court to decide. Now, if you look at the declarations, there are some differences, but if you take into account I think the most critical piece of evidence in the record here is Mr. Colston's resume because it undercuts everything he says in his declaration, and it actually corroborates the declaration of Mr. Joseph O'Halloran that Pacific Seafood submitted in support of its motion for injunctive relief, and it's at page 96 of the excerpt of record. I think if you look at those as admissions, and they are, it's Mr. Colston's description of what he actually did, not what he said before the court, but what he actually did, and it lines up perfectly with what Mr. O'Halloran said, the way he described Mr. Colston's job, and it turns out that Mr. Colston did in fact have knowledge of high-level marketing information, pricing product information, allocations, rebates. He wasn't, as he states in his declaration, he wasn't just, you know, didn't know how fish went from the ocean to a boat to a store. It was much more than that, and so with that evidence taken into account, there are very few, if any, disputed factual issues. Counsel, we took up some of your time on questioning. You've got three minutes left, and did you say you wanted to save that for rebuttal? Yes, Your Honor. And why don't you take another minute now, and then we'll add a couple of minutes on your rebuttal. Okay, thank you. So I would just say that this court does have, based on the precedence we've cited in our supplemental brief, it does have authority to issue injunction on appeal. The court has done it a number of times, either by saying, issuing the injunction itself or directing the district court to immediately enter an injunction on remand, but there's no practical difference between the two. And this case does present appropriate circumstances given the clarity of the record, given that the clock is running. We're nearly out, we're ten months into it now and only two months to go. Okay. I think we understand your opening argument. Why don't you save a couple of minutes for rebuttal? We'll add another minute so you get three. Okay, thank you very much, Your Honor. Okay. Now, for repelli, we've got Marsha Ellsworth. Is that correct? Okay. May it please the court. Good morning, Your Honors. My name is Marsha Ellsworth, and I represent Ocean Beauty Seafoods and Michael Colston. I want to start my remarks today with following up with something counsel said at the beginning of his remarks. Pacific Seafood did receive and is receiving the benefit of their bargain. Mr. Colston is not soliciting its customers, and he is not soliciting Pacific Seafood's employees. I don't know how significant that is because he's in a position to do so. He has information that he would not have had had he not violated the covenant. Isn't that the record? No, I don't think that's in the record. I think what the record is. I said, isn't that the state of the record? Isn't that the only conclusion any sensible person can reach on this record? No. In fact, Mr. Colston, in his declaration, in the record, in terms of customers, clearly states, as does Mark Palmer, the president. If we agree with you, then there's no such thing as a covenant not to compete. Is that so? No, that's not so. Tell me why not. Well, why not is because a covenant not to compete needs to be reasonable. And it needs to be reasonable in the state of Oregon. And this one is not reasonable because it's not limited as to the geographic scope. The way it is written is it says anywhere Pacific Seafood does business, and quite frankly, that's arguably all over the world. It's not just where they have offices or processing plants. Pacific Seafood sources seafood all over the world, and they sell seafood all over the United States. That's a sensible reading so far as you're concerned? That's a sensible reading of what we are faced with here. Well, quite frankly, I have difficulty with a sensible reading of this particular agreement because of its multiple internal inconsistencies. At paragraph 7. You have difficulty, but what you're concerned about is whether we have difficulty, I think. Yes, well, yes, I am concerned with that. Absolutely I'm concerned with that. And I think the plain reading of that agreement, and I think this court would agree with that, is it is inconsistent in terms of drafting. In addition, the district court found that when you read all the agreements together, it's questionable as to whether that non-compete agreement even applies to any other position Mr. Colston held at Pacific Seafood other than that first job in January of 2011 as food service manager. How about his statement? How about his statement? What he said he would do and what he said he would be in a position to do? Well, I don't believe Mr. Colston addresses that particular aspect of the argument in his declaration, but what he has agreed to do in moving forward, and that is in his offer letter from Ocean Beauty, and that is his statement that he would agree not to contact the customers that he called on at Pacific Seafood, and he would agree not to solicit employees. And I think also in this case, and this goes to your question, what is important is Mr. Colston is working in a completely different market sector. He's working in a different market, and he's not working with the same customers he worked with at Pacific Seafood. As counsel talked about, these two companies, although they do business up and down the West Coast, their principal places of business are in different states. Ocean Beauty is based out of Seattle, Washington, and Pacific Seafood is based out of Clackamas, Oregon. Was Mr. Colston subject to a restrictive covenant by your client? Did he sign an agreement that contains a restrictive covenant clause in it? I'm just not clear, but I think that's the case. Yes, he did sign the agreement. Restrictive covenant that you required of Colston now. You have a restrictive covenant clause, right? Correct. I'm sorry, I'm having difficulty hearing you. I'm not being clear. Is there an employment agreement between Colston and your client that contains a restrictive covenant provision? Yes, there is. So what's good for the goose is not good for the gander? Well, that's always a fair question, Your Honor, but they're different covenants. The Ocean Beauty- Tell me about yours. The Ocean Beauty covenant is a smaller geographic scope covenant. It doesn't say anywhere we do business. This is Clackamas County, doesn't it, or Clackamas Region, I think is what it says, right? No, no. The Ocean Beauty refers to Seattle because Ocean Beauty is based in Seattle. Well, all right. Go ahead. Let me hear more about your restrictive clause. Okay, our restrictive clause has to do with working with the same customers within a radius of Seattle, Washington, where he actually did business. I think one of the issues that's gotten a bit conflated in this case is when Mr. Colston worked for Pacific Seafood, where did he actually work? And in Mr. Colston's declaration, we've attempted to paint a picture of where he worked, which was the Clackamas Region, which was Clackamas' suburban Portland, and he worked servicing customers in Portland, southwest Washington, which is just over the border, and into northern California. Mr. Colston did not work in the Seattle area. Well, he started off as retail sales manager with the Pacific Company. He's now the national sales manager with your company, right? Then he became the assistant general manager. It sounds like he's an important employee, and do we not have to really look at the restrictive covenant clause at the time that it was entered into and at the time that he jumped ship, so to speak, instead of looking at what happens over the last several months? Well, in response to that, Your Honor, yes, that's a fair inquiry, but I think what's also important to keep in mind here, that the positions Mr. Colston held at Pacific Seafood were not national positions. Both of these companies tend to do business locally, so they have their home offices where the national policies are set and national things are done, but they also have local operations, and then they have operations in other cities. For example, with Ocean Beauty, it services Seattle clients out of its Seattle offices, but its Portland clients and its northern California clients are serviced out of its Portland office, and Pacific Seafoods has that same distribution model. With respect to Mr. Colston, he was involved on the local level. He was not an executive. He didn't go to executive meetings. He didn't create policy. He followed policy. He was a middle-level regional manager. It's not in the record, but as a matter of curiosity, how much money is he being paid? At where? Now and before. $200,000 a year, $100,000, $300,000? Over $100,000, but less than $200,000. I think both positions were pretty similar. Those facts have not been developed because I think at both the jobs there is a Why can't you resolve this case? You're talking about a $100,000 or a $200,000 employee for a two-month period of time or maybe a year if equitable tolling were to apply. That's a whole separate issue. Can you resolve this matter in the real world? Are you at war with each other? What's underneath all of this? Well, I think what's really unusual, and I deeply appreciate those comments, Your Honor, and I think we all take them to heart. These are real people in the real world. And what makes this case really unique and I think really special in the non-compete context is Mr. Colston is not your typical non-compete violator. He made the decision to leave Pacific Seafood, go to a different state, because he wanted to go home and live with his wife because they'd been living apart for three and a half years. He didn't go for more money. And there's nothing in this record to even suggest that. . . There's no reason why you folks can't come to a settlement agreement here. I just don't understand. I'm just left with the bad taste that you folks are going beyond the pale and to such animosity that you can't really come to a practical resolution. I think that's a . . . You're talking like a district court judge. I have another question for you on the injunction issues, if I may. Certainly. So these non-competes provisions can be very important in the economy. As you've said, your company has one now. Their company has one. And usually courts give very careful attention to whether they're limited in duration and scope so as to be reasonable. Okay, fair enough. Now, you've argued that it's reasonable here that there's no violation because Mr. Coulson is agreeing not to call on Pacific's customers. Okay, well, certainly that's an arrow in your quiver or whatever. It helps your side worse than if he did. But aren't there other things that are part of the competitive knowledge that are trade secrets that a person like Coulson at Pacific would learn that he could use to advantage at Ocean Beauty? For example, if he knows who are not the customers of Pacific, then he goes to Ocean Beauty, then he can come up with a competitive strategy to approach those people in certain ways knowing that Pacific isn't dealing with them. It can have an impact on how effective that would be, or if he knows of certain product segments or lines that Pacific is planning to develop. I don't know if there's anything like that in his knowledge. But, for example, if he knew that Pacific had studied coming up with a frozen packaged salmon instead of the normal fillets, some kind of way to market their product, he knows they've considered it and rejected it. They're not going to do it. Then he knows that at Ocean Beauty, if he says, you guys should do that, they're not going to have a competitor. It's kind of hard, for me at least, to look at a non-compete and say it's satisfied by not calling on customers because there's so much more that could be involved. How do you address that? Well, in my limited time I have left, it raises such interesting feelings. We'll give you a couple of extra minutes. It raises such interesting philosophical questions in general about non-competes and their usefulness in today's commercial society. In direct response to your question, it's really important to keep in mind that Mr. Colston is a salesman. He has worked in sales his entire career. He worked in seafood and protein product sales for U.S. Foods and Food Services of America for 20 years before he went to Pacific Seafood. Pacific Seafood competes with those vendors in the same marketplace. Pacific Seafoods was satisfied when Mr. Colston came to work for them that he would not inappropriately share confidential information with them that belonged to his former employers, and that's in his initial hire letter and his agreement from Pacific Seafood, and that same language is in his offer letter from Ocean Beauty. He's not to share confidential information. I think also what makes this case distinguishable, perhaps from some of the other covenant not-to-compete cases, is the product involved here is a commodity. It's fish. Whether the fish ends up on Pacific Seafood's truck or Ocean Beauty's truck, it's the same fish from the same ocean. There's branded products also here. Well, that argument has been raised about the branded products, but quite frankly at this point the record is not well developed on that. It's just a statement that, oh, there's branded products too. So to that extent, I don't think that's really a – the evidence just isn't there. Branded products are a small part of the work that both of these companies do. But keep in mind, Mr. Colston is a regional salesperson. He's not setting a national marketing policy. He doesn't participate at executive committee meetings at either of the companies, and he never did at Pacific Seafoods. National sales. You said regional. I don't understand that. His position is national. That position, yes, is national food service sales, which is a completely different market segment. So what that means at Ocean – and I meant to address this earlier. Thank you for reminding me about that. What that job means is they're selling to restaurants and hotels, not to grocery stores and to restaurants, which are large buyers of fresh fish. In his job at Pacific Seafoods, that last job he held, he was selling in the retail market to grocery stores and to restaurants. So they're completely different market segments in completely different regions. Wow, it just dazzles me because you talk about so many different variables here that it seems to undercut the whole concept and philosophy of restrictive covenant clauses. Go ahead. Well, and the whole concept and philosophy of restrictive covenant laws is they need to be reasonable. Mr. Colston has worked in this industry now for 25 years. To ask him to not work in this industry, here's his choice. He can stay and work at Pacific Seafood for the rest of his career, or he can not work for a year in seafood sales. What about Palin's suggestion that he can go work in the Gulf or some other area where Ocean Beauty has operations, just not the West Coast where he's in their market area? Well, I think that question is an open, factual question at this point, Your Honor. The record is not fully developed on that issue. Pacific Seafood, quite frankly, has operations and does business all over the world. It sources fish all over the world. It has an office in Chile. It has processing in Texas and in the Gulf and in Las Vegas and in Salt Lake City. It's not just a few plants along the western United States. I understand in the fishing industry there are oceans around the world and there are fish around the world. Okay, well, your time is up. Why don't you try to wrap up in a minute, and then we'll let Mr. Campbell have some rebuttal. Okay, thank you, Your Honor. I'll close. Like I said, there's so much to say on this issue, and it's a very interesting and important issue. I will close by saying this. One of the issues that has been bantered about in this case is whether the district court erred by failing to blue line the agreement to make the geographic restriction enforceable. And it is our position that even if the court had done that, even if the court had clearly blue lined it and said, just for sake of argument, Oregon and Washington, the problem is that would not have prevented the court from denying the issuance of the injunction in the first place because Pacific Seafood failed to demonstrate that irreparable harm was likely, and two, the judge also had substantial concerns about Pacific Seafood's ability to prevail on the merits because of the other problems with the non-compete, with the agreement itself, which could not be rectified by blue lining. Thank you. Thank you, counsel. Okay. Mr. Campbell. And you've got three minutes on your clock, and we have a lot of other cases, so please try to conclude in that time. I will be brief, Your Honor. Thank you. To answer your first question, there's cold-water shrimp fishery off of Washington and Oregon, so that's fine. Counsel made the argument that Pacific Seafood has received the benefit of its bargain. That conflates the concept, as the panel, I think, of a non-solicitation with a non-compete. We have not received the benefit of our bargain, which is that Mr. Colston signed an agreement not to compete for a period of one year. Counsel also states that non-competes raise interesting philosophical questions, but we're not here philosophizing. We're applying the law. And in Oregon, non-competes are enforceable if they're reasonable, and the record here shows that a non-compete is reasonable. Oregon law also says, as followed by this circuit, I believe in the Levy or the Johnson case, that if a non-compete is too broad in geographic scope, the court needs to blue-pencil it and narrow it to what would be reasonable. I would submit that given the caliber of the projects that Mr. Colston was working on, non-compete is enforceable in its entirety, but certainly at a minimum it's enforceable in the regions in which he worked. Again, there's no ambiguity there. He worked in the Clackamas region, which is not just one county in Oregon, but it's Oregon, western Washington, Idaho, northern California. That's right out of Mr. Colston's declaration. He also worked in Muckleteal, Washington. So with those regions in mind, that's the minimum scope of the non-compete, and that is reasonable given the type of projects he was working on. You know what must be in the back of somebody's mind? Would we be closing the barn door after the horse has already left? All of the reasons for the non-compete agreement may have already been violated. Your Honor, that's a fair question. I feel like I'm fighting with one or two arms tied behind my back because I don't, at this point the record doesn't show anything because it's been closed since the appeal was taken. But as I said on direct, they're still rolling out this new branded line of products. So there is a lot that can still be protected. They're going into two big fishing seasons. There's a lot of things. And every day Mr. Colston is out there competing, chipping away at Pacific Seafood's market share. There still is quite a bit to be enjoined. And yes, the barn door has been opened, but it's not too late to close it. So maybe the district court is in the unique best position to really assess all of the current issues and facts that have evolved. This is an equitable concept we're talking about. And would that not be the wise thing to do if we agree that the district court was incorrect in assessing whether injunctive relief was appropriate here? Let the district court wrestle with all these nuances and shape relief that would be current and applicable at the present time? I don't think so, Your Honor, and for two reasons. First, because the record, as the Arc of California case says, that it's only appropriate for the district court to do so when the propriety of injunctive relief turns on intensely factual issues. And here, I think, as established in the record, when you take into account Mr. Colston's declaration or his resume and the job description that he filled at Ocean Beauty, it's very clear that he was in a high-level position, had access to confidential information that he could put to use for Ocean Beauty and to Pacific Seafood's detriment. You don't think a court of equity should take into account the current state of affairs? Well, I think then we run into the problem, and that's the second issue, is that it becomes moot at that point. So a potential middle ground would be to enter it in an injunction and joining Mr. Colston from competing and making him abide by his non-compete agreement pending further proceedings in the district court. You still have a contract action. You still have your tort claims. I don't know how you would calculate damages, but the case goes on. Well, that's precisely the reason why injunctive relief is so important with non-competes because the ability to prove damages is exceedingly difficult. And so that's why I'm suggesting that the court could issue an injunction on appeal that would last until the court has full and final factual determination on the merits. Okay, well, I think we understand your argument, and we've let both of you go over time because it's a very challenging and difficult issue. You know it's important to both Pacific Seafoods and Ocean Beauty and Mr. Colston. So I think we should bring the argument to conclusion, and we'll say the case will be submitted, and you'll hear from us soon. I take it it's not practical to take Judge Block's suggestion to use our mediators because you've done that. We've tried and failed. And the clock keeps ticking as we go. I think the panel will decide the issues that we have. Then your clients can pursue the competition they have a right to do. Okay, thank you very much. Okay, thank you both.
judges: Block, Farris, Gould